**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| JACOB STEPHEN LOVE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 3:13-cv-382 |
| | ) | |
| JEWEL STEELE, Warden, | ) | Judge Sharp |
| | ) | |
| Respondent. | ) | |

**<u>MEMORANDUM OPINION</u>**

Petitioner Jacob Stephen Love, a prisoner in state custody who is currently incarcerated at the DeBerry Special Needs Facility, has filed a *pro se* petition under 28 U.S.C. § 2254 for a writ of habeas corpus (ECF No. 1). The respondent has filed an answer in opposition to the petition, along with a complete copy of the underlying state-court record. The petition is ripe for review. For the reasons set forth herein, the petition will be denied and this matter dismissed.

**I.      BACKGROUND AND PROCEDURAL BACKGROUND**

On March 23, 2009, Jacob Love was indicted by a Davidson County Grand Jury on five counts of aggravated sexual battery and three counts of rape of a child. (ECF No. 14-1, at 4–12.) On February 16, 2010, he filed a petition to enter a plea of guilty to two counts of attempted aggravated sexual battery, with an agreed sentence of four years' confinement on each charge, to run consecutively, for a total sentence of eight years. (ECF No. 14-1, at 13–15.) The plea petition also reflects that the petitioner would be subject to lifetime supervision after his release from prison, and that he would have to register as a sex offender. The plea was accepted by an order entered by Davidson County Criminal Court Judge Cheryl Blackburn on February 25, 2010 (ECF No. 14-1, at 16), after a hearing conducted before her on the same day. (ECF No. 14-3, at 7–20.) Judgment was entered against Love that day as well. (ECF No. 14-1, at 17–18.) The petitioner did not challenge his conviction or sentence on direct appeal.

Shortly after judgment was entered, however, Love filed a *pro se* petition in the state court for the writ of habeas corpus, which the trial court denied on May 26, 2010. (ECF No. 1, at 31–35 (Ex. 1 to habeas petition).) He then filed a *pro se* petition for post-conviction relief on November 12, 2010 (ECF No.

14-1, at 19–27.) Counsel was appointed for him, and an amended petition filed on his behalf in March 2011. (ECF No. 14-1, at 50–52.) After a hearing at which the petitioner and his trial counsel testified (*see* Post-Conviction Tr., ECF No. 14-2), the trial court denied the petition (ECF No. 14-1, at 54–70), and the Tennessee Court of Criminal Appeals affirmed that decision on December 7, 2012. *Love v. State*, No. M2012-00135-CCA-R3-PC, 2012 WL 6098318 (Tenn. Ct. Crim. App. Dec. 7, 2012). The Tennessee Supreme Court denied Love's application for permission to appeal on March 5, 2013. (ECF No. 14-4, at 68.)

Love filed his petition under 28 U.S.C. § 2254 in this Court on April 23, 2013 (ECF No. 1, at 139 (stamp showing date the petition was received by prison mail system)). After being granted an extension of time for doing so, the respondent filed an answer along with a complete copy of the underlying record.

## II.    STATEMENT OF FACTS

The Tennessee Court of Criminal Appeals summarized the testimony presented during the plea hearing as follows:

> The record reflects that the Petitioner was charged with five counts of aggravated sexual battery and three counts of child rape. Pursuant to agreement, he pleaded guilty to two counts of attempted aggravated sexual battery. According to the State's recitation of the facts at the guilty plea hearing:
>
>> [The Petitioner] was residing with the victim.... Her date of birth is 3–29–97, a child less than thirteen years of age. [The Petitioner] ... was residing with her, her sibling, and her mother, and he was her mother's boyfriend at the time.... [O]n two separate incidents ... [the Petitioner] did attempt to engage in unlawful sexual contact with the child named in the indictment. These events happened at their residence, which [was] located here in Davidson County.
>
> The Petitioner received consecutive four-year sentences.
>
> The judgments reflect that the Petitioner was sentenced to community supervision for life following the expiration of his sentence pursuant to Tennessee Code Annotated section 39–13–524 and that the Petitioner was required to register as a sexual offender. The transcript of the plea submission hearing shows that the trial court advised the Petitioner that the consequences of his guilty pleas included registering as a sex offender and lifetime supervision after his release from confinement. When the trial court asked if the Petitioner understood these consequences, his response was, "Yes, ma'am." The court stated that it noted on the petition to enter a plea of guilty that it advised the Petitioner of both consequences. When the trial court asked the Petitioner if he read the guilty plea petition, he responded, "I read it myself. And I had questions, and it was explained to me." He agreed his questions were explained to his satisfaction.

*Love v. State*, 2012 WL 6098318, at *1.

The state appellate court summarized the evidence presented at the post-conviction hearing as

follows:

At the post-conviction hearing, the Petitioner testified that although the State's discovery packet was about three inches thick, counsel failed to review it with him. He said the discovery materials included a criminal history of Jacob J. Love, who was not the Petitioner. He said counsel believed it was the Petitioner's criminal history until eight months later when the Petitioner asked an investigator to compare the Petitioner's fingerprints with Jacob J. Love's fingerprints.

The Petitioner testified that the witness statements contained different versions of events. He said that he talked to counsel about the recording counsel received eight days after the Petitioner's arrest and that the victim admitted on the recording that the victim made up the allegations. He said that although counsel sent the prosecutor an email about the recording, counsel told the Petitioner "none of that matters, because if it goes to trial, they can change their mind, take the plea."

The Petitioner testified that counsel confused the facts of his case with another client's case and that counsel did not know the number of offenses for which the Petitioner was indicted. He said that at his plea hearing, he reviewed the plea agreement with counsel and that he told the trial court he understood the agreement. He said, though, that counsel did not "fully discuss" his being on community supervision for life. He said he feared going to prison and had never faced a prison sentence before the instant charges. He said counsel told him "that all [the Petitioner] would be subject to was lifetime supervision." He said counsel defined lifetime supervision as requiring the Petitioner to go to the police department every four months to register as a sexual offender. He said that after he pleaded guilty, he learned he was required to wear an ankle bracelet, to meet with a parole officer, and to undergo psychological or psychiatric treatment for the remainder of his life. He said he understood he was required to register with the sexual offender database. He said counsel never discussed a prerelease psychological evaluation. He said that counsel told him he would be denied parole the first time and that he would probably receive parole the second time.

The Petitioner testified that in August 2009, he wanted to go to trial but that counsel did not want a trial. He stated that they argued about whether to go to trial and that counsel refused "to present the case in chief." He said counsel told the Petitioner approximately twenty-five times that the Petitioner would be convicted at a trial. He said that although he was charged with two Class C felonies, counsel told him the range of punishment was two to four years. He said that counsel was a "plea attorney" rather than a trial attorney and that counsel told him that counsel had not tried "these types of cases." He said counsel advised him that he should accept the plea offer because sexual offenses were difficult to win at a trial.

The Petitioner testified that he pleaded guilty because he was not familiar with the criminal justice system and his attorney told him to plead guilty. He said he did not know the consequences of his pleading guilty when he pleaded guilty. He said that he and counsel argued several times over counsel's representation and that he attempted to fire counsel because counsel refused to review the discovery materials. He said counsel introduced him to co-counsel and told him the trial court would not allow the Petitioner to fire counsel. He said that to his knowledge, counsel did not file a motion requesting permission to withdraw as his counsel.

On cross-examination, the Petitioner testified that he received the State's discovery package and clarified that counsel refused to review the materials until two months before the trial date. He said counsel agreed that after the investigator examined the fingerprints, the criminal history included in the discovery materials was not the Petitioner's criminal history. He said that eight months before his arrest, the victim's

brother molested the victim and that counsel said this information did not matter. He said that anytime he raised issues with the discovery materials, counsel said the information did not matter.

The Petitioner testified that at the guilty plea hearing, the trial court asked him if he was satisfied with counsel's work and that he responded counsel "were perfect." He agreed that he knew about the evidence the State and the defense would have presented at a trial before he pleaded guilty and that he knew what the witnesses would have testified to at a trial. He agreed that counsel had the same information he had before he pleaded guilty and that counsel's advice was to accept the plea offer. He said he knew the decision whether to plead guilty was his, not counsel's. He agreed counsel only offered their opinions on whether he should plead guilty.

The Petitioner testified that he did not ask counsel about the sexual offender registry and that he thought the registry and lifetime supervision were the same. He said that counsel did not discuss community supervision for life or lifetime supervision at any time before he pleaded guilty. He said he first heard about lifetime supervision from the trial court when he pleaded guilty.

The Petitioner testified that he knew he pleaded guilty to two Class C felonies. He denied counsel told him that he was pleading to Class D felonies. The Petitioner's only issue was the length of sentence, although the range of punishment for a Class C felony was three to six years. He agreed he received two four-year sentences. When asked how counsel confused his case with another client's case, he said counsel told him "eleven people found Raul guilty, one hung the jury. [The Petitioner was] coming behind Raul . . . remember what happened to Raul." He said counsel's statement showed "coercion" but agreed the statement did not show counsel was confused. He said that counsel compared the two cases and agreed that it was counsel's job to inform the Petitioner of how similar cases were resolved.

Upon examination by the trial court, the Petitioner testified that he did not understand the difference between community supervision for life and lifetime supervision. The Petitioner said he did not understand that his registration on the sexual offender database was separate from community supervision.

Counsel testified that he had been licensed to practice law since 1998 and that he only practiced criminal defense work. He agreed he was appointed to represent the Petitioner and said he reviewed the discovery materials numerous times with the Petitioner. He said he did not understand the Petitioner's testimony that counsel refused to review the discovery materials until two months before trial. He said he told the Petitioner that they would meet more often for trial preparation two months before trial.

Counsel testified that with regard to the victim and her family, the Department of Children's Services investigated previous allegations of sexual abuse that did not involve the Petitioner and that he attempted to tell the Petitioner that these previous allegations were irrelevant to the instant charges. He said he attempted to explain to the Petitioner that whether a jury believed the victim mattered at a trial. He said that with regard to the incorrect criminal history, the Petitioner believed the State wanted to prosecute him because of the criminal history. He said he attempted to explain to the Petitioner that the prosecutor charged him because of the victim's allegations, not because of any criminal history. He said that to his knowledge, he did not confuse the Petitioner's case with another client's case, although he said he could have misstated the number of counts in the indictment.

Counsel testified that he had long conversations about the plea offer with the Petitioner. He said that although there were weaknesses in the State's case, he told the

Petitioner that it was "very risky" to go to trial. He said the Petitioner faced life imprisonment if convicted by a jury and agreed the plea agreement was for two consecutive four-year sentences to be served at thirty percent. He said that he told the Petitioner the decision to go to trial was the Petitioner's and agreed that when the Petitioner asked for his opinion, he told the Petitioner that he believed a jury would convict him. He said that he never told the Petitioner to plead guilty and that at one point, the Petitioner's case was scheduled for a trial.

Counsel testified that his frustration with the Petitioner resulted from the Petitioner's changing his mind daily about whether to accept the plea offer or go to trial and that he told the Petitioner that the Petitioner had to decide if he wanted to accept the offer or go to trial. He said that he and the Petitioner had a heated exchange and that he asked co-counsel to work with the Petitioner. He said he "bowed out" of the Petitioner's case when co-counsel became involved. He said that he had never tried a case like the Petitioner's but that co-counsel had.

Counsel testified that he discussed community supervision for life with the Petitioner and that he discussed the consequences of the Petitioner's pleading guilty to a sexual offense, including sexual offender registration, sexual offender requirements, and supervision. He said his file included a copy of the sexual offender probation guidelines, and he thought he showed the guidelines to the Petitioner. He said he did not go into detail about everything that would be required of the Petitioner.

On cross-examination, counsel testified that the Petitioner always denied his guilt and that he believed the Petitioner became frustrated because the Petitioner wanted a trial but knew a trial was risky. He denied dismissing as unimportant anything the Petitioner raised and said he discussed each topic with the Petitioner. He said he interviewed the people the Petitioner suggested and met with the people the Petitioner wanted him to meet. He said he reviewed the video recording of the victim's statement and discussed it with the Petitioner. He denied telling the Petitioner that the Petitioner could not go to trial or that counsel would not try the Petitioner's case. He said he gave the Petitioner his opinion with regard to the outcome of a trial and told the Petitioner it was the Petitioner's decision. He agreed that with regard to the Petitioner's community supervision, there were "probably some specifics" that the Petitioner did not know.

Co-counsel testified that she had been licensed to practice law since 1984 and that she had only done criminal work. She said she told the Petitioner that if he decided to plead guilty, the Petitioner would be required to register as sexual offender and would be subject to lifetime supervision. She did not recall the amount of detail in which she discussed lifetime supervision. She believed the Petitioner knew the consequences of his guilty plea.

On cross-examination, co-counsel testified that she represented the Petitioner close to the time of the guilty plea and that she reviewed the case and was briefed about the status of the case. She said that she began working on the Petitioner's case because of communication issues between counsel and the Petitioner and that she discussed the Petitioner's accepting the plea offer and going to trial. She said she considered the offer to be "extraordinarily good." She said she told the Petitioner that sexual offense cases were difficult to win at trial, that the State made a good offer, and that the Petitioner had to make the decision.

*Id.* at *1–5.

## III.   ISSUES PRESENTED FOR REVIEW

In his present petition, Love asserts the following claims for relief:

1. That the guilty plea was not knowing and voluntary because the petitioner was not made aware of the mandatory requirement of lifetime community supervision following release from prison (ECF No. 1, at 5);

2. That the state's discovery materials included documents pertaining to a different individual named Jacob Love (ECF No. 1, at 14);

3. That the victim allegedly recanted her accusation nearly a year prior to entry of the petitioner's guilty plea (ECF No. 1 at 17).

## IV.    STANDARD OF REVIEW

A federal district court will not entertain a petition for writ of habeas corpus unless the petitioner has first exhausted all available state-court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which promotes comity between the states and the federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to every available level of the state court system. *Rose v. Lundy*, 455 U.S. 509, 518–20 (1982); *see also Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("[A] federal habeas petitioner . . . [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Once his federal claims have been raised in the highest state court available,[1] the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).

A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he presents for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987) (citation omitted). If a habeas petitioner retains

---

[1] In Tennessee, review by the state Supreme Court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(c). Ordinarily, habeas petitions containing unexhausted claims are dismissed without prejudice in order to permit the petitioner the opportunity to pursue them in state court. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (citing *Rose*, 455 U.S. at 518, 520–22); *see also Rhines v. Weber*, 544 U.S. 269 (2005) (reconfirming the continued relevance of *Rose* under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")).

If, however, an unexhausted claim would be procedurally barred under state law, for instance by statutes of limitations or state rules barring successive petitions, then the claim is deemed exhausted (because no further state review is available) but procedurally defaulted, and may not be considered by the federal court on habeas review except under extraordinary circumstances. *Alley v. Bell*, 307 F.3d 380, 385–86 (6th Cir. 2002) (citations omitted); *In re Cook*, 215 F.3d 606, 607–08 (6th Cir. 2000). Specifically, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *cf. Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

Even when a petitioner's application for a writ of habeas corpus raises only federal constitutional claims that have been properly exhausted in the state courts, this Court's review of the state court's resolution of those issues remains quite limited. The standard for reviewing applications for the writ of habeas corpus is set forth in 28 U.S.C. § 2254(d). This section states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In other words, a federal court is bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *Franklin v. Francis*, 144 F.3d 429, 433

(6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [this Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) (citation omitted).

With respect to the "unreasonable application" clause of § 2254(d)(1), the Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
>         . . . . [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409–11 (emphasis original).

With these principles in mind, this Court will turn to the examination of the claims raised in Love's petition for habeas relief.

## V.      ANALYSIS AND DISCUSSION

### A.      Ground One: That the Guilty Plea Was Not Knowing and Voluntary

The respondent concedes that this claim was fully exhausted in the state-court proceedings and is properly before the Court for habeas review. The respondent contends, however, that the Tennessee

Court of Criminal Appeals' resolution of this issue did not constitute an unreasonable application of clearly established federal law.

As set forth above, at the post-conviction hearing, the petitioner testified, essentially, that he never "fully discussed" the meaning of lifetime community supervision with his trial attorneys, and that his counsel had defined it as requiring the petitioner to go to the police department every four months to register as a sexual offender. He testified that, only after he pleaded guilty did he learn that he would be required to wear an ankle bracelet, to meet with a parole officer, and to undergo psychological or psychiatric treatment for the remainder of his life. His lead counsel testified, to the contrary, that he discussed lifetime community supervision with the petitioner, and generally discussed the consequences of a guilty plea, including sexual-offender registration, sexual-offender requirements, and supervision. He also provided a copy of the sex-offender probation requirements to the petitioner so he could see the restrictions that would apply to him after he was released from prison. Defense co-counsel similarly testified that she had told the petitioner that a guilty plea would require the petitioner to register as a sexual offender and that he would be subject to lifetime supervision, but she did not recall the degree of detail in which she had discussed lifetime supervision.

The trial court credited the attorneys' testimony, noting that counsel had testified that they did not go into "specific details regarding everything lifetime supervision entails" but that they had "discussed the lifetime supervision requirement" with the petitioner. (Order Denying Post-Conviction Relief, ECF No. 14-1, at 68.) The court further observed that, during the plea colloquy, she had asked the petitioner if his counsel had explained to him the collateral consequences of the plea, including lifetime community supervision and the sex-offender registry, and the petitioner affirmatively represented that these consequences had been adequately explained to him. (*Id.* at 69.) Specifically, the plea hearing reflected the following exchange:

> THE COURT: . . . All right. Now, I have a petition that tells me you're going to be pleading guilty on Counts 1 and 2 of this indictment to attempted aggravated sexual battery. You're going to receive a four-year sentence as a Range 1 standard offender on each one of them. They're going to be consecutive to each other. So it's a total sentence of eight years, therefore, it has to be served in the Department of Corrections. You're doing this in your best interest, but you understand the consequences. The consequences are that you're going to have to register as a sex offender when you're released, *and* you're going to be on *lifetime supervision* when you get out. And everything else is going to be dismissed. Is that your understanding of the agreement?

> MR. LOVE: Yes, ma'am.
>
> THE COURT: All right. Now, I'm going to add to make sure—I put on here that you're advised in open court about the *lifetime supervision and* the sex offender registration.

(Guilty-Plea Hearing Tr., ECF No. 14-3, at 9–10 (emphasis added).)

The court further queried:

> THE COURT: . . . But you still have to register as a sex offender when you're released *and have lifetime supervision.* So the question is: Did your attorneys discuss with you all of that and about this *lifetime supervision and* about the sex offender registration? Do you understand that?
>
> MR. LOVE: Yes, ma'am.

(*Id.* ECF No. 14-3, at 11 (emphasis added).)

During the post-conviction hearing, the trial judge found that the written plea agreement reflected both requirements, and that a handwritten note initialed by the judge herself on the plea agreement showed that she too had discussed the matter with Love at the time she accepted the plea: "2/25/10 advised in open court lifetime supervision and sex offender registration." (ECF No. 14-1, at 68 (quoting Plea Petition, ECF No. 14-3, at 3).) Based on all these facts, the trial court determined that the petitioner had been adequately informed of the consequences of his guilty plea, and denied post-conviction relief on the basis of this claim.

On appeal, the Tennessee Court of Criminal Appeals considered the applicable federal standard pertaining to the voluntariness of a guilty plea, as follows:

> The United States Supreme Court has held that a plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

*Love*, 2012 WL 6098318, at *6. Based on that standard, in light of the evidence before the trial court and the trial court's crediting trial counsel's testimony, the Tennessee Court of Criminal Appeals concluded that "the Petitioner was informed of the community supervision for life requirement and that his pleas were knowingly and voluntarily entered. The evidence does not preponderate against the trial court's factual findings. We conclude that counsel was not deficient and that the Petitioner is not entitled to

relief." *Id.* at *7.

This Court finds that the Tennessee Court of Criminal Appeals reasonably applied clearly held federal law to deny the petitioner relief. The court accurately cited and applied *Alford*, which contains the applicable standard, and the court reasonably found that the testimony of the petitioner's counsel and co-counsel, as well as the trial judge's own comments at the state sentencing and post-conviction hearings, showed that the petitioner had been adequately apprised of the mandatory requirement of lifetime community supervision following release from prison, which was incorporated into the proposed plea petition. The post-conviction court acted within its discretion to credit the testimony of the petitioner's counsel and co-counsel. As the respondent points out, Judge Blackburn was very careful not to conflate the sexual-offender-registration requirement and the lifetime-supervision requirement, and instead articulated them, repeatedly, as two separate consequences of the guilty plea. And on each occasion, the petitioner indicated that he understood. The petitioner also signed the plea petition, which stated, "I believe my lawyer has done everything any lawyer could have done to represent me and I am satisfied with my legal representation and assistance in this case. I have no problem communicating with my attorney." (Plea Petition, ECF No 14-1, at 14.) The trial court was not unreasonable in discrediting the petitioner's testimony at the post-conviction hearing, and the state appellate court reasonably applied clearly held federal law to find that the petitioner's guilty plea was knowing and voluntary. The petitioner is not entitled to relief on the basis of this claim.

> **B. Ground Two: That the State's Files Included the Criminal History of the Wrong Jacob Love**

The petitioner next complains that the state's discovery materials included documents pertaining to a different individual named Jacob Love (Jacob J. Love rather than Jacob Stephen Love).

A petitioner may be entitled to habeas corpus relief under 28 U.S.C. § 2254 only if he shows "that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Ground Two as articulated by the petitioner does not allege a constitutional violation. On this basis alone, the Court finds that the petitioner is not entitled to relief on the basis of this claim.

Moreover, as the respondent points out, even if this issue raised a federal constitutional claim, the petitioner concedes that he did not exhaust this claim in the state court, and he is now procedurally barred from doing so by the one-petition rule in Tenn. Code Ann. § 40-30-102(c). The claim is therefore

considered exhausted but procedurally defaulted, and barred from review by this Court unless the petitioner can establish cause for the default and prejudice from a violation of federal law, or alternatively that a failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The petitioner has not articulated cause or prejudice, nor could he plausibly argue that a failure to consider this claim would result in a fundamental miscarriage of justice. For this reason too, the petitioner is not entitled to relief on the basis of Ground Two.

C.       **Ground Three: That the Victim Recanted her Accusation**

The Court liberally interprets this ground for relief as a claim that defense counsel was ineffective for discounting the effect of the victim's recantation of her accusation and insisting that it made no difference to the petitioner's chances at trial, and therefore continuing to persuade the petitioner to plead guilty rather than to risk going to trial.

Construed as such, the claim states a colorable claim for relief based on the violation of a constitutional right to reasonably effective counsel, but the petitioner concedes that he did not exhaust this claim in the state courts. Moreover, as with Ground Two, the petitioner is barred by Tennessee's one-petition rule from presenting the issue to the state courts at this date. Tenn. Code Ann. § 40-30-103(c). This claim too is therefore technically exhausted but procedurally defaulted, and may not be reviewed by this Court unless the petitioner provides cause and prejudice sufficient to overcome the default, or alternatively that a failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The petitioner does not attempt to establish cause for the procedural default; he simply asserts that his trial attorneys did not believe the victim's recantation would be useful at trial or during plea negotiations, and that his post-conviction counsel did not question the trial attorneys on this issue. The petitioner is not entitled to relief on the basis of this claim. *Coleman*, 501 U.S. at 749.

VI.       **CONCLUSION**

For the reasons set forth herein, Jacob Love's petition under § 2254 will be denied and this matter dismissed with prejudice. An appropriate order is filed herewith.

Kevin H. Sharp
_____
Kevin H. Sharp
United States District Judge